UNITED STATES of America

v.

**72.71 ACRES OF LAND, MORE OR LESS, SITUATE IN MONTGOMERY COUNTY, State of Maryland, and John C. Webb, et al.**

Civ. A. No. 8628.

United States District Court
D. Maryland,
Civil Division.

May 1, 1959.

See also 167 F.Supp. 512.

Leon H. A. Pierson, U. S. Atty., Martin A. Ferris, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

John C. Webb, in pro. per.

CHESNUT, District Judge.

The matter now before the Court in the above case arises upon a petition filed by Capt. and Mrs. Webb (landowners) for "relief from judgment" based on rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1] This section provides in part that a litigant may file a petition for relief from judgment against him based on "newly discovered evidence" or "fraud" if filed *within a reasonable time,* and if filed not more than one year after the judgment was entered. In this case the petition referred to was filed very shortly before the expiration of the year but is opposed by the United States on several grounds, one of which is that it was not filed within a reasonable time. I will first consider this point.

It is necessary to bear in mind the nature of the case as a whole. It is a federal land condemnation case. On December 5, 1955, the United States filed its complaint to condemn for military purposes a nike site on the property of John C. and Helen H. Webb in Montgomery County, Maryland. What was taken consisted of 13 acres in fee simple and an easement in 22 acres which left the latter acreage usable only for agricultural purposes. These 35 acres were a small part of a farm of 198 acres belonging to the landowners. On December 5, 1955, in accordance with due procedure the United States deposited in the Registry of this Court the sum of $8,600 as estimated just compensation for the taking of the property. On January 26, 1956, Capt. Webb withdrew the whole of the deposit of $8,600 by consent, leaving open for determination the amount of just compensation.

On February 21, 1956, the landowners appeared in the case by their attorney, James R. Miller. On May 11, 1956, Mr. Miller withdrew his appearance and on October 29, 1956, John E. Oxley, an attorney of Montgomery County, entered his appearance for the property owners.

1. Section 60(b) reads as follows:

"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. As amended Dec. 27, 1946, Dec. 29, 1948, eff. Oct. 20, 1949."

The case came on for trial on October 22, 1957, when the jury was impaneled, brief opening statements by counsel for the parties were made and the jury was instructed to visit the property in the custody of the marshal and with instructions given by the Court that when viewing the property the parties would be represented respectively by some one on the ground who would have the opportunity to point out the boundary lines of the property condemned and its relation to the whole property of the Webbs, and also generally to see nearby surrounding properties. After the jury had inspected the property the parties submitted evidence with respect to valuations to determine just compensation. The Government was represented by two appraisers and the property owners were represented by two appraisers. Some part of the evidence given by all the appraisers was based on sales not too remote in time or place, and thought by the witnesses respectively to be "comparable sales". The valuation of the property by the Government appraisers ranged from $8,600 to about $10,000, approximately; but the valuation of the appraisers for the property owners varied from $41,000 to $43,-000, approximately. One of the appraisers for the property owners relied on what he considered as a comparable sale, the sale of the Hadley farm of about 400 acres for a sum to represent a valuation of about $500 an acre, the farm referred to adjoining that of the Webb farm.

The trial lasted three days in all. After argument of counsel the jury was instructed as to the law applicable to the case and the jury returned a written inquisition on October 24, 1957, fixing the just compensation payable to the Webbs at $14,000.

On November 1, 1957, Mr. Oxley withdrew his appearance for the property owners and Messrs. Custer and Seegmiller, who had not previously been connected with the case but who were attorneys in Montgomery County, entered their appearance for the Webbs and filed a motion for a new trial, assigning the reason that the verdict was against the evidence, and irregularities in the trial; and on the same date filed another motion to extend the time for assigning further grounds in support of the motion for a new trial until November 25, 1957, which was granted by the Court, and on November 25, 1957, the new motion was filed.

This motion for a new trial came on to be heard and after hearing counsel was overruled by the Court in a written opinion filed December 23, 1957 (D.C.Md. 1957, 157 F.Supp. 401, affirmed Webb v. United States, 4 Cir., 256 F.2d 669).

Some time after the affirmance by the Court of Appeals it appears that the new counsel retired or were released by the property owners, and on October 10, 1958, two weeks before the expiration of the year from the date of the judgment, Capt. Webb filed the motion for relief from judgment prepared by himself without the aid of counsel. This motion could not appropriately be immediately heard as the property owners were petitioning for the issuance of certiorari by the Supreme Court to review the order of the Court of Appeals dated June 30, 1958, affirming the judgment of this court in overruling the motion for a new trial. The petition for certiorari was denied on January 12, 1959 (358 U.S. 931, 79 S.Ct. 319, 3 L.Ed.2d 304) and thereafter Capt. Webb filed a petition in the Court of Appeals for leave to this Court to consider his motion for rehearing or a new trial and such permission was given by the Court of Appeals in a per curiam order dated March 11, 1959 (4 Cir., 264 F.2d 888).

While the expressions in the motion of the grounds for a new trial may seem to need clarification, I understand, as aided by the oral hearing, that what Capt. Webb wishes to present as a basis for a new trial and what he seems to de-

scribe as newly discovered evidence, is that he thinks if a new trial is granted he will be able to establish that the real consideration for the sale referred to above as a "comparable sale" was really about $700 an acre instead of $500 an acre as advanced by his appraisers.

■ In view of the nature and perspective of the case as a whole, it is my opinion that the present motion has not been filed within a reasonable time. The valuation of the property for the determination of just compensation had to be made as of December 5, 1955. The property owners were promptly apprised of the taking and appeared by counsel and had nearly two years to prepare their case for the jury. The main question in the whole matter always has been what was just compensation. The property owners contend for a much larger valuation than the jury's award. They had not only nearly two years to prepare their case before the trial but after it they had nearly another year before filing the present motion. In the meantime on November 10, 1958, the property owners have withdrawn the balance of the $14,-000, to wit $6,048.

Rule 60(b) headed "Relief from Judgment" seems to be at least an unusual application, if properly applicable at all to the situation we have here. There is no judgment *against* the Webbs but only in their favor, the benefits of which they have accepted although possibly without prejudice. Their objective seems to be a new trial of the case in the hope that another jury will grant them a larger sum for just compensation. But if another jury should award a smaller sum, the property owners would legally be required to refund the difference to the Government. And at the present time they make no offer or tender of return of the sum or any part thereof which has already been paid to them.

■ There are even more important objections to granting the motion than its lack of timeliness. There are some well-settled rules with respect to grant-ing a motion for a new trial on the ground of newly discovered evidence. The new evidence referred to must be something which was unknown at or before the trial, must have been something which could not have been discovered by reasonable diligence and must also be something which in its nature would indicate that a new trial would be more favorable to the movant, and must be material and not merely cumulative. Moore, Federal Practice, Vol. 7, 2d Ed., p. 243; United States v. Frankfeld, D.C. Md.1953, 111 F.Supp. 919, at page 922, affirmed Meyers v. United States, 4 Cir., 1953, 207 F.2d 413.

■ The new evidence here relied upon and as above referred to, is that one of the alleged "comparable sales" used by one of the appraisers for the property owners at the trial as a basis for his valuation was at the rate of $500 an acre, while it is now said the rate was really $700 an acre. But when what is said in the motion is closely read, it appears that this difference was in fact known to the property owners even before the first trial. What is now said is that while the property owners knew the true valuation was $700 an acre, they did not advance that at the trial because, as they say, they felt unable to prove it because the parties to the sale were unwilling to then state the real price in that the purchaser was only a "straw man" and it was not until later that the real purchaser was revealed by a subsequent deed reflecting the true and larger purchase price. More particularly it is now said by Capt. Webb that the first recorded sale of the Hadley farm (used as a comparable sale) was in March 1956 at the apparent purchase price per acre of $500, but that on March 1, 1957, the same property was embraced in a recorded deed showing the consideration to be at the rate of $700 an acre. As the latter deed was recorded it could, of course, have been discovered by diligence before the trial. It is ordinarily the function of a real estate appraiser to make an exami-

nation of the Land Records to discover so-called "comparable sales". In this instance the appraiser evidently did make such an examination and did learn of the first sale but apparently overlooked the second sale involving the same property.

Nor do I think the difference between the $500 and $700 would have been material and would likely have produced a more favorable valuation for the property owners if it had been advanced at the trial. The sale of the Hadley farm referred to as a comparable sale was not a dominate feature of the evidence as to the value of the property taken. The four appraisers used different sales as comparables. The Hadley farm was only one of such sales, eight or more in number. The land taken by the Government constituted in all 35 acres. While the valuation by the jury was $14,000 or at the rate of less than $400 an acre even if all 35 acres had been taken in fee, this was materially less than the $500 an acre for the comparable sales used by the property owners' appraisers at the trial. It is clearly inferable that the jury did not accept the Hadley farm sale as a "comparable sale", and there was evidence in the case to that effect. Furthermore, as has previously been pointed out in the transcribed charge to the jury in the case and in the written opinion overruling the motion for a new trial, the real contest as to valuation was between the contention of the property owners that the valuation should be on the basis of the value of the property for development purposes, and the contention of the Government that the basis for valuation was that of agricultural property. The jury evidently found against the property owners as to the proper basis.

For all these reasons I conclude that the motion for a new trial based on newly discovered evidence should be and it is hereby *overruled*.

On April **7**, 1959, Capt. Webb filed an additional motion called a motion to amend the former motion filed October 10, 1958. This second motion was filed long after the expiration of a year from the date of the judgment and therefore not within the time limit for filing a motion on the ground of newly discovered evidence or fraud. Amendments of pleadings before the trial of a case are liberally allowed but after the review of this case as heretofore made, I do not think the present motion should be allowed as an amendment at this late date.

This motion is captioned as a motion to relieve the property owners from judgment on the ground of both newly discovered evidence and "fraud". With it is filed an affidavit of Capt. Webb. On reading it, it will be found that what is now referred to as newly discovered evidence is substantially the same as the earlier motion filed on October 10, 1958. It is therefore subject to the same considerations that I have found are fatal to the granting of a motion on the basis of newly discovered evidence. The second part of the affidavit sets out certain matters occurring at the trial itself in October 1957 which are advanced as warranting the charge of fraud against the Assistant United States Attorney in the trial of the case. What is now said in this respect does not, in my opinion, constitute anything like fraud within the meaning of rule 60(b). At the most it might be referred to as a further specification of misconduct of the Assistant United States Attorney, in the view of the affiant, and as such it is certainly not timely but very belated. It will be remembered that the property owners by their then counsel obtained an order extending the time for filing further grounds for a new trial after obtaining a transcript of the trial of the case from the court reporter; and thereafter added to their motion for a new trial the special assignment of alleged misconduct of the Assistant United States Attorney in the trial. This motion was overruled after hearing and the ground of alleged mis-

conduct was litigated on appeal and overruled by the Court of Appeals. What is now further said in this connection is in substance that the Assistant United States Attorney knew or should have known that the road bordering the property taken by the Government, then a gravel road only, was intended to be widened and improved by the public authority and that during the trial of the case a paper which the affiant thought was of importance to the case had been left by him or his attorneys in the court room during recess and was not found by them after recess.

As to the condition of the road, which was open for discussion on appeal, it should be noted that the roadway referred to was in fact a gravel road in December 1955 when the land was taken and, so far as I recall from the evidence in the case or from anything now said by the property owners, is still a gravel road. But however that may be, the valuation had to be with respect to the conditions existing in December 1955 when the property was taken by the Government.

The present motion seems to make the point that under section 60(b) the motion for relief from judgment may be filed even after the expiration of a year for "any other reason justifiying relief". Assuming, without deciding, that this phrase is sufficient to allow re-opening of a judgment for other than newly discovered evidence or fraud, it would at least seem to be limited to very unusual situations of an extraordinary nature in order to avoid manifest injustice. Moore, Fed.Proc. Vol. 7, 2d Ed., p. 297 et seq.; Barron & Holtzoff, Fed.Prac. & Proc. Vol. 3, § 1329, p. 417 et seq. I do not find that anything in these two motions filed at this late date could fairly be included in such a category.

For all these reasons both the pending motions are hereby denied. The Clerk is requested to send a copy of this opinion and order to the property owners.